IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| USA,<br><br>    Plaintiff,<br><br>    v.<br><br>WENTWORTH,<br><br>    Defendant. | Case No. 19-cr-00388-CRB-1<br><br>**ORDER DENYING MOTION FOR SENTENCE REDUCTION UNDER 18 U.S.C. § 3582(C)(1)(A)** |

Defendant Joshua Wentworth ("Wentworth") moves for compassionate release and reduction of his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A). Mot. (dkt. 32). Wentworth argues that there are extraordinary and compelling circumstances that warrant a reduced sentence, including: (1) his medical circumstances, (2) the harsh conditions of his confinement caused by COVID-19, and (3) his need to care for his mother and son. Mot. at 11, 13, 15. The Government opposes. First Opp'n (dkt. 28), Second Opp'n (dkt. 36). For the reasons discussed below, the Court DENIES Wentworth's motion.

**I.    BACKGROUND**

Wentworth is currently serving a 77-month sentence after pleading guilty to one count of felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1). Judgment (dkt. 18).

**A.    Convictions and Sentencing**

On May 12, 2019, Wentworth was arrested for possessing two assault rifles, five pistols, multiple extended magazines, and over 400 rounds of ammunitions as a convicted felon. Plea Agreement (dkt. 11) ¶ 2. Wentworth had been previously convicted of four California felonies, including criminal threats, possession of metal knuckles, and two

1   convictions for being a felon in possession of a firearm.  Id.

2        On August 20, 2019, the federal government indicted Wentworth on one count of
3   violating the felon-in-possession statute, 18 U.S.C. § 922(g)(1).  Indictment (dkt. 7).  On
4   January 22, 2020, this Court sentenced Wentworth to 77 months in prison, to be followed
5   by a three-year term of supervised release.  See Judgment.

6        Wentworth is currently serving his sentence at FCI Sheridan and has an expected
7   release date of April 28, 2025.  See Find an Inmate, Federal Bureau of Prisons,
8   https://www.bop.gov/inmateloc/ (last visited March 12, 2024).

9        **B.**    **Compassionate Release Motion**

10       On September 5, 2023, Wentworth filed a pro se motion for compassionate release.
11  See dkt. 27.  The Court referred him to CJA Panel counsel, dkt. 30, and his appointed
12  counsel filed the present motion, dkt. 32.  Pursuant to 18 U.S.C. § 3582(c)(1)(A),
13  Wentworth moves for compassionate release on the grounds of his medical conditions, the
14  Bureau of Prison's ("BOP") failure to provide adequate medical care, the harsh conditions
15  of confinement due to COVID-19, and his family circumstances.  See generally Mot.  The
16  Government opposes, arguing that Wentworth has not presented extraordinary and
17  compelling reasons for his release.  See generally First Opp'n, Second Opp'n.

18  **II.**    **LEGAL STANDARD**

19       Generally, a federal court "'may not modify a term of imprisonment once it has
20  been imposed.'"  Dillon v. United States, 560 U.S. 817, 819 (2010) (quoting 18 U.S.C. §
21  3582(c)).  However, under 18 U.S.C. § 3582(c)(1)(A), courts have the authority to grant
22  compassionate release and reduce a sentence for "extraordinary and compelling" reasons.
23  This is a narrow exception, and "the court's disposition of a compassionate release motion
24  'is discretionary, not mandatory.'"  United States v. Wright, 46 F.4th 938, 944–45 (9th Cir.
25  2022) (quoting United States v. Jones, 980 F.3d 1098, 1106 (6th Cir. 2020)).

26       Congress amended § 3582(c)(1)(A) to permit a defendant to petition the court
27  directly for compassionate release through the First Step Act of 2018.  Pub. L. No. 115-
28  391, Title VI, sec. 603(b)(1), § 3582, 132 Stat. 5194, 5239 (2018).  As amended, a

defendant may seek a reduction directly from the court, provided that they first exhaust their administrative remedies. United States v. Keller, 2 F.4th 1278, 1281 (9th Cir. 2021). To do so, the defendant must request a reduced sentence from the BOP, and the request must either be denied or exceed a thirty-day period, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A).

The Sentencing Commission recently promulgated amendments to the Sentencing Guidelines, providing the first guidance for the term "extraordinary and compelling reasons" since the First Step Act was passed.[1] U.S.S.G. § 1B1.13. Effective November 1, 2023, courts are required to abide by this Sentencing Commission policy statement, which lists "six categories of circumstances that may constitute 'extraordinary and compelling reasons,'" when evaluating a § 3582(c) motion for compassionate release.[2] Id.; see Concepcion v. United States, 597 U.S. 481, 494–95 (2022).

Courts evaluate three steps upon receiving a motion for compassionate release: (i) whether "extraordinary and compelling reasons warrant" a sentence reduction; (ii) whether a reduction is "consistent with applicable policy statements issued by the Sentencing Commission"; and (iii) whether the applicable § 3553(a) sentencing factors support release. 18 U.S.C. § 3582(c)(1)(A); Wright, 46 F.4th 938 at 945. A court "need not evaluate each step," to properly deny a motion for compassionate release. Keller, 2 F.4th 1278, at 1284. A defendant bears the burden of "establish[ing] his eligibility for compassionate release." Wright, 46 F.4th at 951.

---

[1] See U.S. Sentencing Comm'n, Amendments to the Sentencing Guidelines (April 27, 2023), https://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/202305RF.pdf.

[2] These six categories are: "(1) medical circumstances of the defendant where the defendant suffers from severe or chronic illness; (2) age of the defendant where the defendant is at least sixty-five years old; (3) family circumstances of the defendant where there is no one other than the defendant to care for a family member; (4) victim of abuse where the defendant has been assaulted in prison by a [BOP] employee; (5) other reasons of similar gravity, either independently or collectively; and (6) an unusually long sentence. The policy statements also order that, to reduce a sentence, the court must determine that '[t]he defendant is not a danger to the safety of any other person or to the community.'" United States v. Garcia Nava, No. 19-CR-2034-GPC, 2024 WL 221439, at *2 (S.D. Cal. Jan. 19, 2024) (quoting U.S.S.G. § 1B1.13(a)(2)).

### III. DISCUSSION

It is undisputed that Wentworth has exhausted his administrative remedies.[3] Mot. at 9; First Opp'n at 5. Accordingly, the Court proceeds to the merits of Wentworth's compassionate release motion. The Court's analysis begins and ends with whether Wentworth has presented "extraordinary and compelling reasons" for reducing his sentence.

#### A. Extraordinary and Compelling Reasons

Of the six circumstances listed in Section 1B1.13 as representing extraordinary and compelling reasons, two are relevant to Wentworth's motion: (1) Wentworth's medical condition, and (2) the residual exception. Wentworth's proffered reasons are considered below, both individually and in combination.

##### 1. Medical Condition

Under the amended guidelines, a defendant may demonstrate that his or her medical condition presents an extraordinary and compelling reason if the defendant is "suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." Id. § 1B1.13(b)(1)(C).[4]

Wentworth argues that the BOP's failure to provide adequate medical care for his gallbladder condition is an extraordinary and compelling reason warranting sentence reduction. Mot. at 11–13. Specifically, Wentworth argues that his "need to have his gallbladder removed" is a "'medical condition that requires long-term or specialized care'" that the BOP is not providing and "'without which [he] is at risk of serious deterioration in health or death.'" Mot. at 10 (quoting § 1B1.13(b)(1)(C)). Wentworth further argues that

---

[3] Wentworth filed a request with the Warden of FCI Sheridan on July 19, 2023, and 30 days passed with no response. Mot. at 9. The Government does not contest that he has exhausted. Id.; First Opp'n at 5.

[4] The guidelines identify other circumstances where a defendant may demonstrate that his or her medical condition presents an extraordinary and compelling reason. See U.S.S.G. § 1B1.13(b)(1)(B), (D). Here, Wentworth only argues that his medical condition constitutes an extraordinary and compelling reason under § 1B1.13(b)(1)(C). Mot. at 10. The Court therefore does not address the other § 1B1.13(b)(1) circumstances.

4

his recovery would be much quicker if he were released because he would be able to "take care of his medical issues on his own terms." Mot. at 12. In response, the Government asserts that Wentworth's gallbladder condition is not an extraordinary and compelling reason justifying release because "the condition is not sufficiently serious," Second Opp'n at 7, and Wentworth "refus[ed] [his] scheduled gallbladder surgery," id. at 6.

The Court agrees with the Government. Wentworth has not showed that his gallbladder condition constitutes an extraordinary and compelling reason for two reasons. First, Wentworth has not demonstrated that "long-term or specialized medical care [] is not being provided." § 1B1.13(b)(1)(C) (emphasis added). Wentworth's assertion that he has not received adequate medical care for his gallbladder problems is belied by his medical records, which show that he has been evaluated by BOP medical members and an outside physician for his condition and has been offered treatment.

A brief timeline of his medical care follows. On November 14, 2021, Wentworth made his first request for medical attention. Mot. at 4. Wentworth noted that "something [was] majorly wrong with [his] stomach," and asked to "see a doctor or stomach specialist as soon as possible." Mot. at 5. Subsequently, Wentworth was seen by FCI Sheridan's medical staff and diagnosed with gas.[5] Id. Then, on January 3 and January 10, 2022, Wentworth again requested to be seen about "severe stomach pain." Id. On January 11, 2022, Wentworth made an additional request to be seen about his abdominal pain. Id. On that same day, Wentworth was seen by FCI Sheridan medical staff and was eventually referred to a specialist. Id. On March 9, 2023, Wentworth was seen by a specialist who recommended surgery to remove his gallbladder. Id. FCI Sheridan medical staff scheduled his surgery for June 21, 2023. Id.

---

[5] Wentworth argues that "BOP showed a lack of due care by downplaying the severe symptoms [Wentworth] related to them," and that he was "dismissed as just having 'gas' when he complained of the pain in his side." Mot. at 12. But Wentworth does not submit any evidence regarding that specific encounter or diagnosis, so the Court cannot determine whether BOP provided inadequate care in that instance. Regardless, given the medical care provided subsequent to November 2021, see supra, the Court concludes that Wentworth fails to establish an extraordinary and compelling reason warranting release.

Wentworth claims that "the surgery was never done" and that he "never learned when the surgery was scheduled for, nor did he receive any follow-up care for his gallbladder issues." Mot. at 5. However, contrary to Wentworth's assertions, the Government submits evidence showing that Wentworth refused the surgery. See Second Opp'n at 6–7. Specifically, Wentworth sent FCI Sheridan staff a note on June 18, 2023, stating: "I am scheduled for a surgery on my gallbladder. I want to refuse the surgery. Please and thank you." Id.[6] Because Wentworth does not dispute that he sent this note, the Court credits the Government's evidence over Wentworth's unsupported assertion.

Thus, the Court concludes that Wentworth has failed to demonstrate that "long-term or specialized medical care [] is not being provided" to treat his gallbladder condition. § 1B1.13(b)(1)(C). That Wentworth has not received surgery to remove his gallbladder does not satisfy this standard, given that he is the one who declined the surgery. Cf. USA v. Gerrans, No. 18-CR-00310-EMC-1, 2023 WL 7637353, at *5 (N.D. Cal. Nov. 14, 2023) ("To hold otherwise, would be to allow a defendant properly incarcerated according to the law to subvert the sentence imposed by the court by his voluntary decision to expose himself to an avoidable risk"). And should he wish to go through with the surgery now, he fails to explain why he is unable to do so while in FCI Sheridan. Although the Court is sympathetic to Wentworth's medical condition and does not condone long delays in care, Wentworth's circumstances do not rise to the level of "extraordinary and compelling."[7]

---

[6] An FCI Sheridan staff member advised Wentworth that "[a] refusal form for the procedure need[ed] to be signed." Id. Both parties acknowledge that Wentworth never signed a refusal form. See Second Opp'n at 7; Reply at 1 (dkt. 37). Wentworth argues that the Court should accordingly "reject the government's claim that [Wentworth] refused surgery on his gallbladder," Reply at 1, but he does not dispute that he sent the June 18 note refusing the scheduled surgery.

[7] Wentworth cites to several cases in which courts found that inadequacy of medical treatment rose to the level of "extraordinary and compelling" reasons warranting a sentence reduction. See Mot. at 11. Each is inapposite. First, these out-of-district cases are not binding on this Court. Second, these cases are not persuasive because each is distinguishable on the facts. In contrast to those cited cases, Wentworth's medical records show that he was scheduled for a non-urgent surgery, that he refused the surgery, and that the BOP is willing and able to address any ongoing medical concerns. See Second Opp'n at 6–7; compare United States v. Nieves-Feliciano, No. 3:19CR135 (JBA), 2021 WL 1170317, at *4 (D. Conn. Mar. 29, 2021) (defendant cited as evidence of inadequate

6

Second, Wentworth has not established that he "is at risk of serious deterioration in health or death" without the gallbladder surgery. § 1B1.13(b)(1)(C). Wentworth asserts that "[t]o this day, [he] continues to live with this painful medical condition," and that gallbladder removal is an "urgent, medically necessary procedure." Mot. at 12. However, contrary to Wentworth's assertions, his medical records describe the surgery as "non-emergent" and an "elective" procedure. Dkt. 33-3, 33-4; see United States v. Salazar-Valenzuela, No. cr-1102310002, 2022 WL 16635330, at *2 (D. Ariz. Nov. 2, 2022) (collecting cases holding that a court cannot credit claims that are not supported by the defendant's medical record). Wentworth's medical records further describe his pain as "intermittent," having "occurred 3–4 times." Dkt. 33-4. Thus, Wentworth fails to establish that his condition places him at risk of "serious deterioration in health or death" without treatment.

Based on the evidence provided, Wentworth has not demonstrated that he has a medical condition rising to the level of an extraordinary and compelling reason warranting release under § 1B1.13(b)(1)(B). The Court denies Wentworth's compassionate release motion on this basis.

Nevertheless, the Court wishes to address several assertions made by Wentworth that concern the Court. According to Wentworth "to this day, [he] continues to live with this painful medical condition," Mot. at 12, and the BOP "has unreasonably and

---

medical care "BOP's faulty medical records" and "its refusal to refer [the defendant] to a specialist as recommended . . ."); United States v. Coppin, No. 2:16-CR-00223-KJM, 2020 WL 7646416, at *1 (E.D. Cal. Dec. 23, 2020) (defendant presented unrebutted evidence that his scheduled colonoscopy never took place and that his condition was classified as "urgent"); United States v. Sanders, No. 2:13-CR-00312-KJM, 2021 WL 78869, at *1 (E.D. Cal. Jan. 6, 202) ("FCI Florence has shown itself incapable or unwilling to treat [defendant's] medical condition by not providing him with further evaluation or treatment despite repeated high blood pressure readings in the span of four months"); United States v. Beck, 425 F. Supp. 3d 573, 580–81 (M.D.N.C. 2019) (finding that the defendant had "invasive breast cancer" and "received grossly inadequate treatment" which caused "her cancer spread to her lymph nodes."); United States v. McCall, 465 F. Supp. 3d 1201, 1207–09 (M.D. Ala. 2020) (concluding that the defendant's "particular circumstances pose an urgent life-or-death situation that the BOP is unable to address in the face of the COVID-19 outbreak . . .").

7

unnecessarily delayed the gallbladder surgery a specialist recommended," id. at 13. The Government assures the Court that, "[c]onsidering Wentworth's claims in [this] motion, FCI Sheridan medical staff are following up with [him] regarding the surgery and refusal note." Second Opp'n at 7. The Court does not condone lengthy delays in medical care and seeks to ensure that Wentworth's medical situation is properly resolved. Accordingly, the Court DIRECTS the Government to file a declaration within 10 days informing the Court either that (1) BOP medical staff has re-scheduled Wentworth's gallbladder removal surgery or otherwise met with Wentworth to discuss continued treatment of his condition, or (2) there is good reason that it has not done so.

### 2. Residual Exception

The residual exception provides that a defendant can establish an extraordinary and compelling reason if he presents "any other circumstances or combination of circumstances" that are "similar in gravity" to the other extraordinary and compelling reasons listed in paragraphs (1) through (4) of § 1B1.13. See U.S.S.G § 1B1.13(b)(5).

Wentworth asserts that two other circumstances of his give rise to extraordinary and compelling reasons warranting release: (1) the harsh conditions of his confinement due to COVID-19, and (2) his family circumstances. See Mot. at 13, 15.

#### a. Harsh Conditions of Confinement Due to COVID-19

Wentworth argues that "incarceration during the ongoing COVID-19 pandemic . . . involved particularly harsh conditions of confinement" that amount to an extraordinary and compelling reason for release. Mot. at 13. This argument fails.

Because the pandemic conditions Wentworth presents have been experienced by everyone in prison, they amount to generalized conditions that are not "extraordinary and compelling" grounds for release. See Gerrans, 2023 WL 7637353, at *7 (N.D. Cal. Nov. 14, 2023) ("While the Court recognizes that the harshness of conditions may warrant early release, or a finding of time served, what [the defendant] experienced was hardly unique. Thousands of individuals incarcerated during the COVID pandemic unfortunately suffered similar hardships. This factor alone cannot be grounds for compassion release lest

virtually all those incarcerated during the pandemic be likewise eligible"); United States v. Lischewski, No. 18-CR-00203-EMC-1, 2020 WL 6562311, at *2 (N.D. Cal. Nov. 9, 2020) ("Every prisoner in the facility and other BOP facilities is subject to the similar conditions brought about by the COVID-19 pandemic; [the defendant] has not explained why he should be given special or unique treatment.").

Wentworth has not explained why his conditions of confinement during COVID-19 are unique, and therefore this circumstance does not rise to the level of an "extreme and compelling" reason warranting release.[8]

### b. Family Circumstances

Lastly, Wentworth argues that his family circumstances constitute an extraordinary and compelling reason for his release. Mot. at 15. Wentworth argues that he needs to support his single mother and his son who "has struggled without a father." Id.

Compassionate release may be based upon a need to care for a minor or disabled child if the only available caregiver is deceased or incapacitated. § 1B1.13(3)(A). Additionally, compassionate release may be based on "[t]he incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent." § 1B1.13(3)(C).

The family circumstances Wentworth describes are not extraordinary and compelling. As the Government notes, Wentworth has not provided "any details about whether his [mother] or his son can care for themselves or what he can do for them."

---

[8] Wentworth cites to several cases recognizing harsh conditions of confinement as a "valid factor supporting a shorter custodial sentence." See Mot. at 13–14 (citing United States v. Spano, 476 F.3d 476, 479 (7th Cir. 2007); United States v. Dones, No. 3:18 CR-00246-(JBA), 2021 WL 6063238, at *3–4 (D. Conn. Dec. 22, 2021); United States v. Sherrod, No. 19-20139, 2021 WL 3473236, at *3 (E.D. Mich. Aug. 6, 2021); United States v. Mcrae, 2021 WL 142277, *5 (S.D.N.Y. 2021); United States v. McGee, No. 12-CR-00052-EMC-1, 2021 WL 1660251, at *2 (N.D. Cal. Apr. 26, 2021); United States v. Hatcher, No. 18 CR. 454-10 (KPF), 2021 WL 1535310, at *4 (S.D.N.Y. Apr. 19, 2021); United States v. Rodriguez, 492 F. Supp. 3d 306, 310 (S.D.N.Y. 2020)). These cases are neither binding, nor persuasive. As discussed supra, cases in this district have held that the conditions brought about by COVID-19 cannot be the sole factor warranting a reduced sentence.

9

Second Opp'n at 8. Regarding his mother, Wentworth notes that she is "single" and "plans to move from California to Maine to be near him." Mot. at 7. Regarding his son, Wentworth states only that he is "starting to struggle because he does not have a father figure." Id. There is no evidence that Wentworth's minor child or his mother require his care. Wentworth's desire to raise his son and care for his mother, while laudable, is not an extraordinary and compelling reason for release. Thus, his family circumstances do not establish an extraordinary and compelling reason under the residual exception because his family circumstances are not "similar in gravity" to any other extraordinary and compelling reasons listed in paragraphs (1) through (4) of § 1B1.13.

## IV. CONCLUSION

For the foregoing reasons, the Court holds that neither Wentworth's gallbladder condition, his conditions of confinement during COVID-19, nor his family circumstances, individually nor collectively, amount to extraordinary and compelling reasons. On that basis, the Court DENIES Wentworth's motion.

The Court DIRECTS the Government to file a declaration within 10 days informing the Court either that (1) BOP medical staff has re-scheduled Wentworth's gallbladder removal surgery or otherwise met with Wentworth to discuss continued treatment of his condition, or (2) there is good reason that it has not done so.

**IT IS SO ORDERED.**

Dated: April 3, 2024

CHARLES R. BREYER
United States District Judge